UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KASUNDRA K. JOYCE and WENDY G. ENRIQUEZ, | * | CIVIL ACTION |
| | * | |
| | * | NO. 20 – 03193 – EEF - DPC |
| Plaintiffs | * | |
| VS. | * | SECTION " L " ( 2 ) |
| | * | |
| AVA M. DEJOIE , in her official capacity as Secretary of the Louisiana Workforce Commission | * | JUDGE ELDON E. FALLON |
| | * | |
| | * | MAGISTRATE JUDGE |
| | * | DONNA PHILLIPS CURRAULT |
| Defendant | * | |

***************************************

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

**Introduction**

Defendant's arguments to dismiss the suit misconceive Plaintiffs' case in two fundamental ways.

First, defendant claims that Plaintiffs' claims concern the state's implementation of federal Pandemic Unemployment Assistance (PUA), and that both Plaintiffs were terminated from PUA. (Memorandum at 1-3.) Since that program has ended it is alleged that the Plaintiffs' claims have ended.

But Plaintiff Wendy Enriquez was not terminated from PUA. She was terminated from state Unemployment Insurance.

Plaintiffs' Complaint did explain Pandemic Unemployment Assistance ("PUA"), which was an addition to the longstanding state unemployment assistance program for most of 2020 and 2021. But Plaintiffs' claims do not hinge on the existence or parameters of PUA. Instead, Plaintiffs' claims concern the lack of pretermination notice and opportunity to respond when Louisiana unemployment compensation is terminated.

Second, the motion to dismiss rests on the theory that events have mooted Plaintiffs' claims, and Plaintiffs lack standing unless they show that their issues are capable of repetition but evading review. This argument, too, misses the mark.

The Plaintiffs were denied pretermination notice and opportunity to respond before their unemployment compensation was terminated. They both were still without benefits and a hearing by the time the complaint was filed. As set out in Plaintiffs' Motion for Partial Summary Judgment, the Defendant itself altered the situation and took the actions that it alleges mooted their claims. It reinstated their unemployment compensation after suit was filed.

Where the defendant through its actions purports to moot a claim, the courts look on the actions with skepticism, and through a different lens that places the burden of proof on the defendant to establish that the actions cannot recur. Courts look for commitments by the defendant that show permanence or commitment to its change of position. No such commitment is presented here.

Therefore both attempts to establish mootness fail.

## **Facts**

The named plaintiffs, Kasundra Joyce and Wendy Enriquez, were employed before the pandemic, but both lost employment because of the pandemic. Complaint ¶¶ 8, 38-39, 67. Both were found eligible for and were being paid unemployment compensation. Complaint ¶¶ 9, 42, 68.

Ms. Joyce was being paid Pandemic Unemployment Assistance under the new and temporary program created by the federal government in response to the pandemic. Complaint ¶ 42. Ms. Enriquez was being paid regular state unemployment compensation. Complaint ¶ 68-69, 72.

The Louisiana Workforce Commission (LWC) unexpectedly stopped paying unemployment compensation for both of them, one in July, and the other in August. ¶¶ 46-49 (Ms. Joyce); 72-79 (Ms. Enriquez). LWC did so without providing them with a reason why it intended to do so, or even a notice and opportunity to respond when it stopped the payments. Complaint ¶¶ 10, 47, 49, 73, 77.

Both Ms. Joyce and Ms. Enriquez went without unemployment compensation for months before the suit was filed. Complaint ¶¶ 11, 59, 90-91. Neither had been given their administrative hearing to challenge the denial by the time the suit was filed. Complaint ¶¶ 59, 90-91.

As a result, they filed this suit to challenge the state's procedures in terminating unemployment compensation without notice or an opportunity to respond to alleged reasons for termination before a termination is effectuated.

When suit was filed, the defendant agency, LWC, administered both regular state unemployment compensation and Pandemic Unemployment Assistance; a single application is judged for both eligibilities. Complaint ¶¶ 84-86.

The agency allows staff to cut off eligibility for weeks or months without sending out a notice giving reasons and offering the opportunity for a fair hearing. Complaint ¶¶ 5, 92, 100. Even once that notice is sent and a fair hearing is requested, it takes months before most fair hearings are heard. Complaint ¶¶ 93-94. LWC makes no special provision to expedite the hearings of persons whose unemployment compensation has been terminated. Complaint ¶ 95.

Defendant has admitted that LWC has no computer programming to prevent suspension of unemployment compensation without notice, no policy setting out a time by which a notice must issue, no hard stops in its systems to require issuance of a notice or resumption of payment

within any specific time period, and no policy against a single staff member suspending compensation based on that staff member's initial conclusion of ineligibility without a second opinion. (Rec Doc 23-6, Admissions 1, 3-6; Rec Doc 23-7, Interrogatory responses ## 1, 2; Request for Production Responses ## 7, 9, 10.)

**Procedural Posture**

Plaintiffs have stipulated for the purpose of this motion that they received all the benefits to which they are entitled. (This includes the fact that neither Plaintiff is currently receiving unemployment compensation.) The Stipulation was not limited to "Pandemic Unemployment Assistance."

The Defendant claims to have "vacated its reservation of rights to seek reimbursement of sums paid (i.e., overpayment assessments)." Memorandum at 6. Such protection for the Plaintiffs has not occurred. Instead, it was a term discussed in the very brief settlement negotiations Defendant has entertained. But no settlement or protection was ever put in place.

Unaddressed by the informal relief granted by the LWC are Plaintiffs' claims for policy relief numbered 3-5 at p. 15 of the Complaint, asking that the Court:

> 3. Declare defendant's procedures in reversing claimants' previously determined eligibility for unemployment compensation without advance notice of the reason and an opportunity to contest to be illegal.
> 4. Enjoin defendant from reversing claimants' previously determined eligibility for unemployment compensation without advance notice of the reason and an opportunity to contest.
> 5. Order defendant to revise its regulations, policies, and procedures accordingly.

Defendant correctly observes that these three claims "are asserted on behalf of 'claimants' generally," rather than just the Plaintiffs. (Memorandum at 6.)[1]

---

[1] LWC notes that the suit is not filed as a class action, *Id*., perhaps suggesting but not stating that the lack of a class allows the agency to carry on violating the law for others, so long as the agency has mooted the claims of anyone who filed suit. Defendant makes no argument that the absence of a class is dispositive. So there is no need to cite the

Plaintiffs have noticed a cross-motion for Partial Summary Judgment to be submitted for the same date as this motion. The motion evidences that Plaintiffs have been terminated without the agency issuing contemporaneous notice, reasons, and appeal rights when it stopped their unemployment benefits. For Ms. Enriquez, notice issued three weeks later. For Ms. Joyce, notice did not issue until over three months after her unemployment compensation was terminated. Once given the chance, each filed an administrative appeal from their July or August termination. Neither had received a hearing by the time suit was filed in late November.

Plaintiffs' motion claims they are entitled to judgment based on the violation of due process requirements. If Plaintiffs prevail on that motion, the agency must revise its notice requirements. Those revisions could include pretermination opportunity to respond to a notice that sets out the basis for the agency's proposed termination, the remaining issue in the case.

## Argument

The Court must assess its jurisdiction before issuing relief. So Plaintiffs' primary explanation of why the Court has continuing jurisdiction of the case is set out in their Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment. Rec. Doc. 23-2, particularly §§ A, E, and F, pp. 7-12, 21-24. This Opposition responds to Defendant's arguments for dismissal.

Defendant introduces its Mootness argument with the very appealing statement that "Mootness is the doctrine of standing in a time frame." Memorandum at 4. This expression does come from Supreme Court cases. But the Court itself has walked away from the expression because it errantly confuses two doctrines with distinct requisites:

> [T]he Court of Appeals confused mootness with standing. The confusion is understandable, given this Court's repeated statements that the doctrine

---

authorities showing that the Court is empowered to grant such relief even in the absence of a class. Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment §F, Rec. Doc. 23-2, pp. 23-24,.

> of mootness can be described as "the doctrine of standing set in a time frame"… [But] the description of mootness as "standing set in a time frame" is not comprehensive.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 189-190 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, n. 22 (1997); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

Defendant then states, "[A]ny set [of] circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot," citing *In re Oil Spill by Oil Rig Deepwater Horizon*, 792 F.Supp 2d 926, 931 (E.D. La. 2011), *aff'd in part, rev'd in part sub nom. Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co*., 704 F.3d 413 (5th Cir. 2013). Memorandum at 4.

But rather than say "Any set of circumstances that eliminates actual controversy…" the cited case qualifies the statement, saying instead "***Generally***, any set of circumstances that eliminates actual controversy…" (emphasis added). The Fifth Circuit case Defendant cites just before the quote also makes the same qualified statement, and goes on to state "There are, however, exceptions to the operation of the mootness doctrine." *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). The Fifth Circuit, in fact, found jurisdiction based on one of those exceptions. Four of the six cases cited by Defendant in this initial passage overruled challenges to jurisdiction.

The instant suit is easily distinguished from the other two. *In re Oil Spill by Oil Rig Deepwater Horizon*, 792 F.Supp 2d 926, 931 (E.D. La. 2011), *aff'd in part, rev'd in part sub nom. Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co*., 704 F.3d 413 (5th Cir. 2013), concerned a one-time event. And *Allen v. Wright*, 468 U.S. 737 (1984), found the harm of

children being educated in racially segregated schools was not fairly traceable to the lone fact of the IRS granting tax exempt status to private segregation academies.

Defendant's Memorandum goes on to confuse the requirements for standing and mootness, thereby misanalyzing the status of this case.

**A. <u>Plaintiffs meet the requirements for standing</u>**

Defendant raises the issue of standing, and claims Plaintiffs lack standing because Defendant has now paid the Plaintiffs all unemployment compensation they are due. Each argument heading is phrased in terms of standing, after discussion of the Rule 12(b)(1) standard of review. Similarly, most of the cited cases concern standing. But Defendant's concerns about mootness are not properly assessed under the rubric of standing.

**1. Standing is judged when the complaint is filed, not by post-complaint events.**

Standing and mootness are separate doctrines, though sometimes understandably confused. Standing is judged strictly by plaintiffs' status when the suit was filed. This even though the proof required to establish standing escalates through the litigation, from allegations in the complaint, contested facts to survive against a summary judgment motion, and then preponderance of evidence to ultimately prevail.

Thus, for standing, the inquiry is not what has happened to plaintiffs since filing, but what plaintiffs' status was when suit was filed.: "While the proof required to establish standing increases as the suit proceeds, …the standing inquiry ***remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed***." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (emphasis added) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 (1997)). *See also Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject

matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction.")

In *Davis*, the Supreme Court found standing to exist based on the plaintiffs' status when the complaint was filed, and went on to separately find no mootness, based on the capable of repetition but evading review doctrine. In *Carr*, the Fifth Circuit reversed dismissal because standing was met when the suit was filed and "*defendant* must adduce evidence from which it is '*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1065 (5th Cir. 1991) (emphasis added) (quoting *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 66 (1987) and *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).

**2. Plaintiffs met the requirements for palpable injury, causation, and redressability when suit was filed.**

Defendant correctly sets out the three elements of standing at their p. 4: (1) injury-in-fact, (2) fairly traceable to defendant's challenged conduct (3) that is likely to be redressed by a favorable judicial decision. Ms. Joyce and Ms. Enriquez unequivocally met this standard when the suit was filed.

As to injury in fact, both were suffering a tangible monetary loss from being terminated from unemployment compensation, and that termination was ongoing when the suit was filed. Complaint ¶¶ 11, 23, 47-48, 73-74, 96.

As to causation, the injury was directly traceable to Defendant's challenged conduct. Each Plaintiff was terminated from unemployment compensation without notice or pretermination process. Complaint ¶¶ 5, 47, 73. And that defective process apparently caused erroneous terminations, in that, as alleged in Defendant's motion, LWC reinstated their unemployment compensation after the suit was filed.

Finally, the complaint also addressed redressability, alleging, reasonably enough, that improved procedures could prevent erroneous terminations without pretermination process. Complaint ¶¶ 5-6. Both Plaintiffs still had more weeks remaining to be paid on their claim. Both stood to benefit from reinstatement and corrected procedures. Complaint ¶ 99.

Thus, Defendant's attack on Plaintiffs' "standing" is misdirected. Similarly, its reliance on cases about standing is misplaced.

### B. <u>The suit is not mooted by Defendant's action, unaccompanied by any commitment to run its program differently in the future.</u>

Since standing is judged at the moment the complaint is filed, and mootness comes about because of events after a complaint is filed, mootness is necessarily a somewhat different inquiry.

The correct framework for assessing mootness is set out in Plaintiffs' Motion for Partial Summary Judgment, Argument § A, Rec. Doc. 23-2 at 7-12. The key point is that when the defendant causes the alleged mootness, the Court is to be protective of its jurisdiction. Jurisdiction is not defeated unless the defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). As set out in Plaintiffs' summary judgment memorandum, this burden is usually met by establishing not just that the situation initially presented to the Court is resolved, but that policies or practices have been changed so that it cannot recur. Rec. Doc. 23-2 at 10-12.

A case is recognized as moot only if "subsequent events [have made] it ***absolutely clear*** that the allegedly wrongful behavior could not ***reasonably be expected to recur.***" A defendant

claiming mootness bears the "***formidable burden***" of making this showing. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

"In general, 'a defendant's cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice,' even in cases in which injunctive relief is sought.'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) (quoting *Meza v. Livingston*, 607 F.3d 392, 399-400 (5th Cir. 2010) and *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982)).

The exception is "when a government entity assures a court of continued compliance, and the court has no reason to doubt the assurance . . . the voluntary cessation doctrine does not apply." *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 572 (5th Cir. 2018). Courts assume that "***formally*** announced changes to official governmental policy are not mere litigation posturing" unless evidence is presented to the contrary. *Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018) (emphasis added); *see also Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017). Where, however, governmental actors ground their mootness arguments on post-complaint actions that *do not* involve announcements of formal policy changes, courts often refuse to allow defendants to destroy jurisdiction.

A "presumption of future injury" exists when a defendant has "voluntarily ceased" a challenged practice "in response to litigation." *Friends of the Earth, Inc.*, 528 U.S. at 191 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998)). "Defendant-induced mootness" is viewed "with caution" and courts within the Fifth Circuit consider subsequent remedial actions allegedly taken to obviate a cause of action to "strongly mitigate against a finding of mootness." *Yarls*, 905 F.3d at 910; *see also Smith v. Young Men's Christian Ass'n of Montgomery, Inc.*, 462 F.2d 634, 645 (5th Cir. 1972). Thus, "[a]llegations by a defendant that its

voluntary conduct has mooted the plaintiff's case require closer examination than allegations that 'happenstance' or official acts of third parties have mooted the case." *Yarls*, 905 F.3d at 910 (quoting *Envt'l Conservation Org. v. City of Dallas*, 529 F.3d 519, 528 n.4 (5th Cir. 2008)) (internal citations and quotations omitted).

For example, in *Uptown Grill, LLC v. Shwartz*, No. 13-6560, 2021 U.S. Dist. LEXIS 15102 (E.D. La. Jan. 27, 2021) (Milazzo, J), this Court denied a motion to dismiss and granted partial relief, where a restaurant infringing on trademarks had been closed by defendant, because without a judgment nothing prevented the defendant from opening a new restaurant that would infringe again. The court noted that, "The bar to overcome mootness is lower than the bar to establish standing: 'there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.'" *Id* at *38 (quoting *Cain v. City of New Orleans*, 281 F. Supp. 3d 624, 641 (E.D. La. 2017), *aff'd sub nom. Cain v. White*, 937 F.3d 446 (5th Cir. 2019) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 190)). "It is thus 'well settled that a defendant's voluntary cessation of allegedly illegal conduct does not moot the controversy arising from the challenged activity.'" *Id.* at *38 (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1461 (5th Cir. 1983)).

Plaintiffs' memorandum in support of partial summary judgment provides instances where defendants claimed they would not engage in the challenged conduct again. But because compliance was not formalized in policies, the assurances were judged inadequate to moot the controversy. Rec. Doc. 23-2 at 10-11. Those cases include a recent one from this Section. *Caliste v. Cantrell*, 329 F.Supp.3d 296, 306 (E.D.La. 2018)(Fallon, J) *aff'd on other grounds*, 937 F.3d 525 (5th Cir. 2019). Here Defendant does not even allege that it is disavowing the challenged practices.

**C. <u>The cases cited by the Defendant do not undermine the Court's continuing jurisdiction as set out above.</u>**

Defendant cites *Price v. Mich. Unemployment Ins. Agency*, No. 20-12756, 2021 U.S. Dist. LEXIS 45367 (E.D. Mich. Mar. 11, 2021) at p. 5 n.24. This case would seemingly be relevant because it concerns Pandemic Unemployment Assistance. But in it the plaintiff sought only the PUA benefits he claimed to have been improperly denied. Before suit, he had been certified for PUA but never paid. After service of the suit, his benefits began, and his suit sought no other relief –neither damages nor injunctive relief: "The relief his complaint seeks is simply payment of the PUA benefits he is entitled to." *Id.* at *3. The *pro se* claimant made no appearance to defend against the motion to dismiss. As a result, those case facts differ from this suit which, as described above, challenges policies of the Defendant and seeks policy changes. And the discussion about jurisdiction was dicta in that case. As the court stated, "The Court could grant the motion on this ground alone since Price's failure to respond means he has waived any potential arguments." *Id*.

Also seemingly relevant in that it is a Pandemic Unemployment case, is *Payne v. Dep't of Emp., Training & Rehab*, 494 P.3d 901 (Nev. 2021), 2021 WL 4167928, 2021 Nev. Unpub. LEXIS 652, cited in Defendant's Memorandum at 7. That case, too, does not speak to whether current Plaintiffs' case is moot.

First and foremost, the federal framework for dealing with a defendant's voluntary cessation of challenged conduct is not discussed in the state court opinion. Second, plaintiffs in the case waived any argument as to whether the court could address relief that would affect third parties: "appellants …made no argument until their reply brief on appeal that, as individuals, they should be allowed to assert the rights of third parties." *Id.* at 2021 Nev. Unpub. LEXIS 652 *5 (citing a Nevada state court case about waiver of issues not raised in the opening brief).

Further, no systemic deficiencies were challenged. Instead, problems stemmed from a unique "processing 'glitch.'" *Id.* at 6.

Finally and crucially, the Nevada lower court had issued relief on one of the issues that this instant suit raises: termination of benefits without a pretermination hearing. This relief was reversed because "appellants did not allege that DETR had wrongfully terminated their own payments." *Id.* at 7. In contrast, it is alleged in the complaint and evidenced with respect to the summary judgment motion that Ms. Joyce's and Ms. Enriquez's unemployment payments were terminated without contemporaneous notice or pretermination opportunity to respond to any charges.

Defendant criticizes that Plaintiffs have not shown a prospect of repetition, Memorandum at 8, citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) and *Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 149 (2010). The terms moot and mootness do not appear in either of these cases.

*Both* cases instead concern standing, presenting arguments that the plaintiffs lacked any injury in fact, or "certainly impending" prospect of injury. Ms. Joyce and Ms. Enriquez's loss of unemployment compensation when suit was filed amply satisfies the injury in fact test.

As set out above, standing and mootness analyses differ. As also set out, where a defendant's own conduct purportedly mooted a case, the correct frame for review is the voluntary cession of challenged conduct, under which it is the defendant's "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000) (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). LWC has not attempted to shoulder or meet that burden.

Workers lose jobs all the time, and the idea that a low wage worker will never draw unemployment compensation again is more improbable.[2] One's ability to avoid unemployment can be even more uncertain in Louisiana, where tens of thousands were recently plunged into unemployment following Hurricane Ida.[3]

As another example, the Complaint sets out that the Plaintiff Kasundra Joyce had received unemployment compensation before and would likely receive it again. ¶¶ 60-61.

Undersigned counsel advised at the September 20 Status Conference that, as the facts have played out, Plaintiffs' contention is that the exception to mootness is based on the Defendant's voluntary cessation of the conduct at issue. Plaintiffs' complaint does refer to the capable of repetition but evading review doctrine. ¶¶ 100-101. Plaintiffs could not have pled voluntary cessation of the conduct in the complaint, because it had not occurred by then, and there was no way to be certain it would occur. After filing, Defendant receded from the challenged conduct, but did nothing to prevent the situation from arising again. There has been no change to policies.

Defendant claims, Memorandum at 9, that "the facts demonstrate that Plaintiffs' complaints arose out [of] exceptional circumstances – i.e., the LWC's administration of federal aid in the wake of an unprecedented pandemic and its laudable efforts to get PUA benefits into the hands of claimants as quickly as possible, given most claimants' dire circumstances." Defendant then argues that "[i]solated actions do not fall under an exception to mootness," at p.

---

[2] *See, e.g.*, BUREAU OF LABOR STATISTICS, *Repeat use in the U.S. unemployment insurance system, Monthly Labor Review*, (Sept. 2014) https://www.bls.gov/opub/mlr/2014/article/repeat-use-in-the-u-s-unemployment-insurance-system.htm ("more than half of recipients on temporary layoff and nearly a third of displaced recipients became repeat users, that is, started a new UI claim within a year of the end of their initial claim.")

[3] *See e.g.,* Austin Kemker, *30,000 apply for disaster unemployment; LWC deploys mobile unit to help*, WAFB.COM (Sept. 20, 2021) https://www.wafb.com/2021/09/20/30000-apply-disaster-unemployment-lwc-deploys-mobile-unit-help

10, quoting *Libertarian Party v. Dardenne*, No. CIV A 08-582-JJB, 2009 WL 790149, at *1 (M.D. La. Mar. 24, 2009), *aff'd*, 595 F.3d 215 (5th Cir. 2010). Again, Defendant claims the events are isolated because Pandemic Unemployment Assistance has ended.

That the problems at issue are caused by Pandemic Unemployment Assistance ***is neither a fact shown in the record nor pled. Nothing in Plaintiffs' Complaint limits the circumstances to PUA or a pandemic.*** Indeed, as set out in the complaint, the PUA program was implemented using the same application process as the state's longstanding unemployment compensation program. Rec. Doc. 1, Complaint ¶¶ 7, 17, 85-86, 97.

Instead, the complaint at ¶7 alleges, "the pandemic has brought to light a ***longstanding shortcoming*** in our state's unemployment system, in allowing claimants' benefits to be terminated without predeprivation due process." (Emphasis added.) "It is the way Louisiana's agency has designed its unemployment compensation system." *Id.* at ¶5. Similarly, in their partial summary judgment motion, Plaintiffs show that there is a lack of computer programming or policies to prevent terminations without notice, no deadline in state policies as to how soon after a termination notice must issue, no review by a second person is required, and the agency does not even know which employees have the power to perform such terminations. None of this is related to the existence of PUA or the pandemic. (Rec Doc 23-6, Admissions 1, 3-6; Rec Doc 23-7, Interrogatory responses ## 1, 2; Request for Production Responses ## 7, 9, 10.)

Further, the second Plaintiff, Ms. Enriquez, was subjected to the challenged termination without notice or pretermination opportunity to respond while on state unemployment assistance, not Pandemic Unemployment Assistance. Rec. Doc. 1, Complaint ¶¶ 68, 72.

**<u>Conclusion</u>**

Defendant misses the mark in arguing that Plaintiffs' suit hinges on the events of the pandemic or Pandemic Unemployment Assistance. Similarly, its challenge is misdirected in challenging Plaintiffs' standing, which is established at the time the suit is filed, and in claiming that the only "Exception to Mootness Doctrine" is the capable of repetition doctrine. (Memorandum at 8, § D heading, p. 9).

As set out more fully in Plaintiffs' Motion for Partial Summary Judgment, despite Defendant's actions to moot the case, this Court retains jurisdiction to address the policies challenged by this suit. Those policies require no contemporaneous notice or pretermination opportunity to respond when depriving claimants of their property interest in unemployment compensation. Those policies were unchanged by the pandemic and remain unchanged to this date.

Respectfully submitted,

SOUTHEAST LOUISIANA LEGAL SERVICES

By:__/s/David Williams_______________
David H. Williams, Bar No. 17867 (T.A.)
1340 Poydras Street, Suite 600
New Orleans, Louisiana 70112
Telephone: (504) 529-1063
dwilliams@slls.org
Fax: (504) 596-2241

By:__/s/Hannah Adams_______________
Hannah D. Adams, Bar No. 36343
1340 Poydras Street, Suite 600
New Orleans, Louisiana 70112
(504) 529-1000 x.258
hadams@slls.org

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2021, I electronically filed the foregoing and the attached memorandum with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Harry J. Philips, Jr.,
Erin Sayes Kenny
Taylor, Porter, Brooks & Phillips L.L.P.
450 Laurel Street, 8th Floor (70801)
P.O. Box 2471
Baton Rouge, LA 70821-2471
skip.philips@taylorporter.com
erin.kenny@taylorporter.com

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

none; all parties are represented by counsel participating in ECF.

BY: /s/ David H. Williams
DAVID H. WILLIAMS, BAR NO. 17867
Attorney for Plaintiff
Southeast Louisiana Legal Services.
1010 Common Street, Suite 1400A
New Orleans, LA 70112
Phone: (504) 529-1063
Fax: (504) 596-2241
dwilliams@slls.org