UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KASUNDRA K JOYCE ET AL** | CIVIL ACTION |
| **VERSUS** | NO. 20-3193 |
| **AVA M. DEJOIE** *in her official capacity as Secretary of the Louisiana Workforce Commission* | SECTION "L" (2) |

**ORDER AND REASONS**

Before the Court are two motions. The first is a motion to dismiss for lack of subject matter jurisdiction filed by Defendant Ava Dejoie in her official capacity as Secretary of the Louisiana Workforce Commission. R. Doc. 22. Plaintiffs oppose the motion. R. Doc. 43. Second is Plaintiffs' motion for partial summary judgment. R. Doc. 23. Defendant has filed an opposition. R. Doc. 42. Having considered the memoranda and oral argument of counsel, the record, the applicable law, the Court now issues this Order and Reasons.

**I.     Background**

This case arises out of the decision by Defendant Ava Dejoie ("the Secretary") in her official capacity as Secretary of the Louisiana Workforce Commission ("LWC") to terminate the unemployment benefits of Plaintiffs Kasundra Joyce and Wendy Enriquez without pretermination notice and an opportunity to appeal the decision during the COVID-19 pandemic. R. Doc. 1. The LWC is the state agency charged with administering unemployment benefits in Louisiana. R. Doc. 10 at 6.

Immediately prior to the pandemic, Joyce worked as an independent contractor for an event staffing and security company. R. Doc. 23-1 at 1-2. With the onset of the pandemic in March 2020,

the company no longer had events for Joyce to staff, so she was out of work. R. Doc. 23-1 at 1. Like Joyce, Enriquez was also forced to stop working due to the pandemic. In 2020, before the pandemic, Enriquez worked on a family farm on a self-employed basis. R. Doc. 23-4 at 1. Enriquez performed day-to-day maintenance and handled deliveries for the farm. R. Doc. 23-4 at 1. When the pandemic hit, the childcare services that Enriquez depended upon to care for her minor children shuttered. R. Doc. 23-4 at 1-2. As a result, Enriquez had to quit working on the family farm. R. Doc. 23-4 at 1.

In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in response to the pandemic. Pub. L. No. 116-136, 134 Stat. 281, codified at 15 U.S.C. § 9021 (2020). Section 9021 of the CARES Act established a temporary Pandemic Unemployment Assistance ("PUA") program that provided benefits assistance ("PUA benefits") to individuals who lost work or were unable to work because of the pandemic. The PUA also expanded eligibility for unemployment benefits to workers who would not otherwise qualify. *See id.* at § 2102. In Louisiana, the LWC administered PUA benefits. *See* R. Doc. 23-3 at 2.

Both Plaintiffs filed for and received unemployment compensation through the LWC in the spring of 2020. R. Doc. 23-3 at 1-2; R. Doc. 23-4 at 1-2. Joyce alleges she received PUA benefits, while Enriquez alleges that the LWC determined she was eligible for and paid her "regular" state unemployment insurance. R. Doc. 1 at 8; R. Doc. 23-3 at 1-2.

On July 21, 2020, Joyce suddenly stopped receiving unemployment benefits without having received pretermination notice of the LWC's decision and an opportunity to appeal. R. Doc. 23-3 at 1-2. It was not until several months later, on November 2, 2020, that Joyce received an explanation from the LWC for the termination of her benefits and an opportunity to challenge their termination via an administrative appeal. R. Doc. 23-4. In its belated notice, the LWC

informed Joyce that, because the agency determined that she was actually ineligible for unemployment benefits from the time she had started receiving benefits, Joyce had to repay the agency the total amount of benefits she paid to her—over $12,000. R. Doc. 23-3 at 13-15.  2,568

Meanwhile, Enriquez's benefits were discontinued by the agency on August 8, 2020. *Id.* She also did not receive pretermination notice that the agency deemed her ineligible for benefits nor an opportunity to request an administrative hearing until August 28, 2020, several weeks after her benefits were cancelled. R. Doc. 23-4 at 1-2; *Id.* at 3. As with Joyce, the agency sent Enriquez overpayment notices seeking recoupment of over $12,000 in unemployment benefits that the agency claimed Enriquez had erroneously received. R. Doc. 23-4 at 6-8.

On November 23, 2020, Plaintiffs sued the Secretary under 42 U.S.C. § 1983, contending that they were deprived of due process under the Fourteenth Amendment when their unemployment payments were terminated without pretermination notice of the reason for termination or the opportunity to respond. R. Doc. 1 at 13.  Plaintiffs also allege violations of 42 U.S.C. § 503(a)(1), which requires that unemployment compensation be paid "when due." *Id.* at 14 (citing *Cal. Dep't of Human Res. Dev. v. Java,* 402 U.S. 121 (1971)).

Plaintiffs seek injunctive and declaratory relief and reasonable attorneys' fees. *Id.* at 15. Specifically, Plaintiffs' complaint asks for (1) issuance of a preliminarily injunction requiring the Secretary to continue to pay their unemployment compensation until the Secretary provides notice of reasons for their ineligibility for unemployment benefits and a hearing; (2) a declaration that the procedures used by the Secretary to reverse their eligibility for unemployment compensation without advance notice and an opportunity are unlawful; (3) an injunction preventing the Secretary from reversing their eligibility for unemployment compensation without advance notice and an opportunity for a hearing; (4) an order compelling the Secretary to revise the LWC's regulations,

policies, and procedures in accordance with constitutional requirements; (5) an order requiring the Secretary to remove her hold on Plaintiff's PUA. R. Doc. 1 at 15.

On February 8, 2021, after the filing of this lawsuit and months after Plaintiffs' unemployment benefits were wrongfully terminated, the LWC reinstated both Plaintiffs' benefits. R. Doc. 23-2 at 4. Plaintiffs have stipulated that they have received all benefits to which they are entitled and that they are no longer receiving unemployment compensation. R. Doc. 43 at 4.

During the pendency of this action, Louisiana ended its participation in the PUA federal aid program, effective July 31, 2021. 2021 La. Act No. 276. All federal unemployment benefits, including PUA benefits, expired nationwide in September 2021. American Rescue Plan Act of 2021, Pub. L. No. 117-2, §§9011, 9013, 9016, 135 Stat. 4.

## II.    Pending Motions

### A. Secretary's Motion to Dismiss

The Secretary filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). R. Doc. 22 at 1. The Secretary argues that, because Plaintiffs have received all the PUA benefits to which they are entitled, their claims for an injunction requiring the Secretary to (a) remove her hold on, and (b) continue payment of, their employment benefits are moot. R. Doc. 22 at 1. Likewise, the Secretary argues that Plaintiffs lack standing to challenge the LWC's regulations, policies, and procedures for the administration of unemployment benefits. Because Plaintiffs have received full payment of their PUA benefits, the Secretary argues they cannot show an injury-in-fact that is capable of being judicially redressed. R. Doc. 22 at 2. Last, the Secretary argues that Plaintiffs' challenges to the agency's procedures are moot and that the "capable of repetition yet evading review" exception to mootness does not apply in this case because there is no reasonable expectation that these Plaintiffs will be subjected again to the same

4

actions by the LWC. R. Doc. 22 at 2.

In opposition, Plaintiffs contend that their claims are not moot. R. Doc. 43 at 1-2. First, they argue that, because it is the Secretary's own actions that purportedly mooted their claims, the burden rests on the Secretary to establish that Plaintiffs will not be subjected again to the policies of which they complain. R. Doc. 43 at 1. Plaintiffs point out that the Secretary has not renounced the LWC's allegedly unconstitutional failure to provide pretermination notice and an opportunity to be heard, let alone revised its policies. And Plaintiffs argue that they may again endure the same deprivations by the LWC because they may, in the future, require unemployment benefits in the future. Plaintiffs thus contend that the Secretary has failed to establish mootness.

Second, Plaintiffs disagree that the conclusion of the PUA program moots their claims. Their claims do not hinge on the existence of the PUA, they argue, but instead concern the lack of pretermination notice and opportunity to contest the LWC's decision to end unemployment compensation. Those challenges to the Secretary's policies, Plaintiffs aver, remain live. R. Doc. 43 at 1.

### B. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for partial summary judgment on their claim that the Secretary's termination of their unemployment benefits without pretermination notice and an opportunity to respond violated procedural due process. R. Doc. 23-2 at 1. Plaintiff reiterate many of their arguments as to why their claims are not moot. On the merits, Plaintiffs argue that they had a protected property interest in their unemployment benefits and that due process requires the Secretary to provide notice before terminating unemployment compensation. R. Doc. 23-2 at 12-18. Plaintiffs also assert that any injunctive relief should bind the actions of the LWC as to all unemployment compensation claimants, not just these Plaintiffs. R. Doc. 23-2 at 23.

The Secretary opposes Plaintiffs' motion, contending, again, that Plaintiffs claims are moot. R. Doc. 42 at 3. The Secretary also argues that Plaintiffs' claims are rooted in the "false premise" that the LWC has policies or procedures that permit the suspension or termination of benefits without contemporaneous notice to a beneficiary. R. Doc. 42 at 4. Rather, the Secretary maintains that any belated notice of the termination of Plaintiffs' benefits was merely attributable to the historic volume of claims the LWC processed during the pandemic, coupled with the challenges of administering the unique PUA program—an extraordinary set of circumstances that are unlikely to recur. *Id.* at 6-7. Further, the Secretary argues that Plaintiffs fail to identify an official policy that the Secretary created or implements that deprives Plaintiffs of their unemployment benefits. *Id.* at 10-11.

### III.  Legal Standard

Federal courts must always assure themselves of their own jurisdiction before proceeding to the merits of a case. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Accordingly, the Court must first consider the Secretary's motion to dismiss for lack of jurisdiction. Only if the Court concludes that the case is not moot—that is, that a case-or-controversy exists within the meaning of Article III—may it proceed to examine Plaintiffs' motion for partial summary judgment.

#### A.  Secretary's Motion to Dismiss for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction. When a court lacks jurisdiction over a case, the matter must be dismissed under Federal Rule of Civil Procedure 12(b)(1).

A core limitation on the jurisdiction of federal courts is the doctrine of standing. Rooted in Article III's case-or-controversy requirement, the standing doctrine consists of three essential elements: (1) that the plaintiff suffer an injury-in-fact (2) that is fairly traceable to the conduct of

the defendant and (3) likely redressable by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs, as the party invoking jurisdiction, bear the burden of establishing each element. *Id.* at 339.

Under Article III, an actual case-or-controversy must be extant at all stages of a case. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* at 160-61 (internal quotation marks omitted). In other words, a federal court lacks constitutional jurisdiction over a case that has become moot. But a case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* at 161. Moreover, a "defendant claiming that its voluntary compliance" or voluntary cessation of a challenged activity "moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

B. **Plaintiffs' Motion for Partial Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir.1995).

"[A] dispute about a material fact is genuine if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.* A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Moreover, the court must assess the evidence and "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, "conclusory allegations," "unsubstantiated assertions," or "only a 'scintilla' of evidence" are not sufficient to show a genuine dispute of material fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

"A partial summary judgment order is not a final judgment but is merely a pre-trial adjudication that certain issues are established for trial of the case." *Streber v. Hunter*, 221 F.3d 701, 737 (5th Cir. 2000). Partial summary judgment serves the purpose of rooting out, narrowing, and focusing the issues for trial. *See Calpetco 1981 v. Marshall Exploration, Inc.,* 989 F.2d 1408, 1415 (5th Cir. 1993).

**IV. Discussion**

**A. Secretary's Motion to Dismiss for Lack of Jurisdiction**

Plaintiffs, as noted, stipulated that, after the filing of the instant suit, the Secretary paid them all of the unemployment benefits to which they are entitled and that they are no longer receiving unemployment compensation. R. Doc. 43 at 4. Accordingly, the question arises whether Plaintiffs' claims are moot. Before analyzing this matter, however, the Court notes that the Secretary conflates mootness with standing. Specifically, the Secretary argues that the

*mootness* of Plaintiffs' claims for payment of benefits deprives Plaintiffs of *standing* to assert their remaining claims for declaratory and injunctive relief regarding the agency's policies and procedures for providing beneficiaries with pretermination notice and an opportunity to object to the agency's decision. R. Doc. 22 at 2. The Secretary's argument is premised on the notion that the Secretary's payment to Plaintiffs of the unemployment benefits Plaintiffs sought following the filing of their lawsuit deprives Plaintiffs of a concrete interest in this action. But the standing inquiry is "focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (emphasis added); *see also Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction."). And no party disputes that the complaint's allegation that the Secretary denied Plaintiffs unemployment benefits that they were owed constitutes an injury-in-fact. Thus, Plaintiffs had standing at the time of the suit's inception. Accordingly, the jurisdictional issue here is not whether Plaintiffs' receipt of the benefits they sought after the initiation of their lawsuit strips them of standing; rather, the inquiry is whether Plaintiffs' remaining claims have become moot. The Court now addresses this issue.

Plaintiffs argue that the Secretary's voluntary decision to restore their benefits following the filing of their lawsuit cannot moot their claim. R. Doc. 23-2 at 7-10.[1] Under the voluntary cessation exception to mootness, "a defendant cannot automatically moot a case simply by ending its [allegedly] unlawful conduct once sued." *Already, LLC*, 568 U.S. at 91. In other

---

[1] Because the parties brief the issue of mootness in their memoranda on Defendant's motion to dismiss, R. Docs. 22, 43, and Plaintiffs' motion for partial summary judgment, R. Docs. 23, 42, which were filed relatively contemporaneously, the Court considers the mootness arguments raised in both motions.

words, "a defendant's voluntary cessation of a challenged practice [usually] does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000). The voluntary cessation doctrine is rooted in protecting plaintiffs from a defendant's possible "return to his old ways." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953).

The Supreme Court has laid down a "stringent" standard for determining whether a case has become moot due to a defendant's voluntary conduct: "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 189*; see also Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018) ("Essentially, the goal is to [decide] whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished."). This "heavy burden" is borne by the party asserting mootness, in this case, the Secretary. *Friends of the Earth, Inc.*, 528 U.S. at 189. Nonetheless, an assertion that a violation is likely to recur cannot be entirely speculative. *See Spence v. Nelson*, 533 F. App'x 368, 371 (5th Cir. 2013).

However, the skepticism with which courts generally greet defendant-induced mootness does not apply to "formally announced changes to official governmental policy" because, absent evidence to the contrary, courts presume government officials exercise their duties in good faith, given that they are "public servants, not self-interested private parties." *Yarls v. Bunton*, 905 F.3d 905, 911 (5th Cir. 2018) (quoting *Sossamon v. Lone Star State of Tex.*, 506 F.3d 316, 325-26 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011)).

In this case, the Secretary has, of course, made the payments Plaintiffs alleged they were owed. On the other hand, the Secretary has not amended or disavowed LWC's policies and

practices that Plaintiffs challenge, namely, the agency's procedures for handling pretermination notice to beneficiaries of the cancellation of their unemployment compensation. That is, the Secretary has not fully ceased the conduct Plaintiffs challenge. Rather, Defendant contends that the policies LWC had in effect before the suit—and which remain in effect—comport with constitutional standards. R. Doc. 42 at 4. According to the Secretary, the agency's failure to provide Plaintiffs with pretermination notice resulted from a sui generis constellation of circumstances that is unlikely to repeat itself.

Because the Secretary has not renounced the policies plaintiffs challenge, this case carries an obvious difference from a typical voluntary cessation matter. Whereas the issue in a voluntary cessation case usually is whether it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Friends of the Earth, Inc.*, 528 U.S. at 189, the issue here is not so much whether the Secretary will return to the challenged practice; indeed, there is no practice for the Secretary to "return" to because her policies and practices have not changed. Thus, this case thus falls outside the heartland of the voluntary cessation doctrine.

But the Court does not believe this means that the doctrine is wholly inapplicable. Instead, the doctrine's inquiry must be modified to ask whether it is "absolutely clear that" Plaintiffs cannot "reasonably be expected" to again be subjected to "the allegedly wrongful behavior." *Id.* (order of quotation altered). This formulation seeks to uphold the same interests served by the doctrine: preventing a defendant from unilaterally mooting a case—and thereby escaping judicial review—if there is a more-than-speculative chance both that he will continue his contested practices and, importantly, that plaintiffs will be subjected to those practices, once federal jurisdiction ceases. If there is no reasonable chance that plaintiffs will again be subjected to a challenged practice, then the fact that a defendant has not ceased those practices does not

affect the plaintiff in a concrete way. Put differently, there is no reasonable expectation of a renewed controversy between the parties.

Applying the test set forth above—that is, whether there is a reasonable expectation that Plaintiffs will again endure Defendant's assertedly unlawful behavior—the Court considers whether the circumstances giving rise to this controversy were so unusual that it cannot reasonably be expected that LWC will again wrongfully deny Plaintiffs unemployment benefits and fail to provide them with pretermination of the cancellation of those benefits and an opportunity to appeal that decision. *See id.* Ultimately, this inquiry boils down to whether Plaintiffs will again qualify for and receive unemployment benefits administered by LWC. If the Plaintiffs cannot reasonably be expected to again receive benefits from the agency, then the Court cannot offer any effectual relief and any ruling would constitute an impermissible advisory opinion.

According to the Secretary, during the COVID-19 pandemic, the agency was inundated by an incredibly high volume of unemployment benefits claims filed by workers who lost their jobs because of pandemic-related business closures. R. Doc. 42 at 5-8, 11; R. Doc. 42-2 at 3 (affidavit of Margaret Mabile, Deputy Assistant Secretary for the Office of Unemployment Insurance Administration within the LWC) (stating that unemployment benefits claims filed with the agency increased from approximately 1,200-1,800 per week to 70,000-136,000 per week during the pandemic). At the same time that the LWC was swamped by an influx of claims, the agency had to implement the "unique criteria and protocols" of the PUA, an entirely new unemployment program. R. Doc. 42 at 7. These conditions, the Secretary avers, "overwhelm[ed]" the LWC, combining to form a "perfect storm for the imperfect administration of unemployment claims." R. Doc. 42 at 2.

Plaintiffs dispute the LWC's explanation for its alleged errors in this case. Under Plaintiffs' account, LWC's failures were not merely the result of the unique burdens imposed on the agency during the pandemic but instead stem from systemic shortcomings in the agency's policies and practices. R. Doc. 23-2 at 25.

The Court need not—and cannot at this stage—resolve the parties' factual dispute as to the exact reason LWC cut off Plaintiffs' benefits without providing contemporaneous notice and an opportunity to challenge the decision. Other factors inform the Court's determination as to the likelihood *vel non* that Plaintiffs will again be subjected to the actions and policies of the LWC that they contest. Chief among those considerations: the fact that the COVID-19 pandemic is a singular, historic event. As noted, Congress responded to this unprecedented national emergency by enacting the CARES Act, which includes the PUA program that widened eligibility for unemployment compensation. The Court cannot assume that another unforeseen event causing similarly widespread economic dislocation and disruptions to everyday services, like childcare, will occur, and that, in response, Congress will enact legislation that establishes a PUA-like program. Further, the court is not aware of any legislative or regulatory developments suggesting Louisiana will expand eligibility for its unemployment benefits program, let alone that the state would do so in such a manner that would cover Plaintiffs.

Also relevant to the likelihood of reoccurrence is Plaintiffs' work history and history with unemployment benefits. These factors strongly suggest that Plaintiffs are unlikely to be subjected to any wrongful denials of unemployment benefits or violations of due process by the LWC. That is because the circumstances do not indicate that Plaintiffs will be eligible for unemployment benefits in the first place. First, there is no evidence that Plaintiffs ever applied for, qualified for, or received unemployment benefits in Louisiana or any other jurisdiction prior

13

to the pandemic.[2] Second, the record does not reveal any history of Plaintiffs experiencing unemployment before the pandemic. Third, Plaintiffs qualified for PUA benefits only because they were ineligible for state unemployment compensation under Louisiana's statutory scheme. Fourth, PUA benefits are no longer available as Louisiana ended its participation in the program last summer and the program itself—along with all federal unemployment benefits programs under the CARES Act—expired shortly thereafter. Fifth, regarding Plaintiff Enriquez, the complaint alleges that the LWC determined that she was eligible for state—not PUA—unemployment insurance in April 2020 and that she received state unemployment benefits until August 2020. R. Doc. 1 at 8-9. Based on exhibits filed by Enriquez, she may indeed have received some state unemployment benefits during the pandemic. LWC sent a letter to Enriquez dated August 28, 2020 that, although titled "Federal Pandemic Unemployment Compensation Claim Overpaid Account Establishment Notice," states that Enriquez was "not eligible for $4,446.00 in UI / UI unemployment benefits"—that is, state-paid benefits—remitted between April 5, 2020 to August 8, 2020. R. Doc. 23-4 at 6. The letter refers to these payments as "overpayment 1." Conversely, a second letter from the LWC with the same date, and which refers to "overpayment 2," states that Enriquez was "not eligible for $9,600.00 in Federal Pandemic Unemployment Compensation (FPUC) benefits." R. Doc. 23-4 at 8. Thus, it appears that Enriquez received both state and PUA benefits from the LWC. Of course, and as discussed, the PUA program has ended and is not likely to be revived. And even if Enriquez did receive state unemployment compensation, she would not actually have been eligible for those benefits for at least two reasons: (1) because she was self-employed at the time she stopped working and (2) because the reason she quit working was to tend to her minor children after their childcare

---

[2] Although Plaintiffs' complaint alleges that Joyce "has received unemployment compensation before," R. Doc. 1 at 8, Plaintiffs provide no evidence to substantiate this allegation.

center they attended closed due to the pandemic. *See* LOUISIANA WORKFORCE COMMISSION, *Frequently Asked Questions about COVID-19*, https://www2.laworks.net/FAQs/FAQ_COVID-19_QandA.asp#answer_11 (last updated Apr. 15, 2020) (noting that self-employed persons and those who stop working because of childcare responsibilities are ineligible or state unemployment benefits but may be eligible for PUA). It cannot be assumed that Enriquez will again apply for and receive unemployment benefits for which she is actually ineligible.

Last, no evidence has been offered that Plaintiffs presently qualify for state unemployment benefits or that Plaintiffs have jobs that would qualify them for such benefits should they lose their jobs. To be sure, the burden is on the Secretary to prove that Plaintiffs cannot reasonably be expected to experience the actions that they challenge. *See Friends of the Earth, Inc.*, 528 U.S. at 189. But Plaintiffs' failure to show that they are in a position to potentially qualify for state unemployment insurance benefits in the future militates in favor of finding that it is highly speculative that LWC will someday deny Plaintiffs unemployment compensation without pretermination notice and an opportunity to appeal.

The Court is cognizant that Plaintiffs' occupational roles right before the pandemic—laboring on a family farm and working at an event services company, respectively—presumably were low-wage positions. Such jobs tend to be more precarious than higher-wage or salaried positions. But again, even in those roles, Plaintiffs only properly qualified for PUA benefits, not state unemployment benefits. Accordingly, Plaintiffs' past positions do not show that they are likely to qualify for state unemployment benefits.

Plaintiffs cite an article from the Bureau of Labor Statistics, which reports that "more than half of recipients on temporary layoff and nearly a third of displaced recipients became repeat users, that is, started a new U[nemployment] I[nsurance] claim within a year of the end of

their initial claim." R. Doc. 43 at 14 (citing BUREAU OF LABOR STATISTICS, *Repeat use in the U.S. unemployment insurance system*, *Monthly Labor Review*, (Sept. 2014) https://www.bls.gov/opub/mlr/2014/article/repeat-use-in-the-u-s-unemployment-insurance-system.htm). But that article refers only to the likelihood that recipients of state unemployment benefits will require such benefits in the future. Its findings cannot necessarily be extrapolated to Plaintiffs, who have not (at least based on record evidence) received state unemployment assistance.

The Court also finds instructive the Fifth Circuit's decision in *Fontenot v. McCraw*, 777 F.3d 741 (5th Cir. 2015). That case involved two state statutes regulating motorists: the first statue penalized the more serious offense of operating a motor vehicle without having been issued a license, while the second provision required drivers to produce a license to a peace officer. *Id.* at 744-45. Plaintiffs who had failed to produce a license were erroneously reported to the state as having driven without being issued a license. Based on this inaccurate information, plaintiffs were assessed a surcharge by the Texas Department of Public Safety ("DPS"). Plaintiffs then sued various state officials, including the head of the DPS, asserting that their due process rights were violated. After the suit's filing, the state corrected the driving records of two plaintiffs.

Addressing the issue of mootness, the Fifth Circuit noted that the DPS had not made any changes to its policies vis-à-vis assessing surcharges. *Id.* at 748. Nevertheless, the court concluded that fact was "irrelevant" based on "[t]he very nature of the records correction controversy, which was precipitated by the plaintiffs' failures to produce a driver's license." *Id.* (internal quotation marks omitted). "Unless [plaintiffs] plan to be driving again without carrying their licenses, they have nothing to fear." *Id.*

16

As in *Fontenot*, the "very nature" of the unusual—to say the least—sequence of events that gave rise to this case makes it doubtful that this controversy will repeat itself. *Id.* Again, this case was spawned by an unforeseen pandemic that shutdown large swaths of the economy and critical social services, such as the childcare center Enriquez depended upon to care for her minor children while she worked. In response to this crisis, Congress undertook extraordinary measures. As relevant here, it enacted the temporary—and now defunct—PUA program that extended unemployment benefits to otherwise ineligible individuals, including Plaintiffs. Nothing indicates these events will recur and that Plaintiffs will be eligible for federal unemployment benefits administered by the LWC.

Further, the Court is persuaded that, based on all the circumstances, there is no reasonable expectation that Plaintiffs will be eligible for state unemployment benefits in the future. *See Friends of the Earth, Inc.*, 528 U.S. at 189. Consequently, even though the LWC has not altered its policies, the Court does not believe a live controversy exists. True, unlike in *Fontenot*, Plaintiffs here cannot avoid a future controversy with the LWC merely by complying with the law. But the truly exceptional events underlying this case lead the Court to hold that it is "absolutely clear" that it cannot reasonably be expected that Plaintiffs will face the same actions and policies they challenge. *See id.*

In sum, the LWC's payment to Plaintiffs' of the benefits they sought extinguished this controversy.[3] This case is therefore moot, and the Court only has jurisdiction to dismiss it.

---

[3] Plaintiffs do not argue that the case remains live under the capable-of-repetition-yet-evading-review exception to mootness, and the Court find that the doctrine is inapplicable. That mootness exception holds that where a practice no longer directly affects the attacking party, a claim is not moot if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009) (internal quotation marks omitted). First, the policies of LWC that Plaintiffs challenge have not ceased, so the first prong of the test is not met. Second, and for reasons set forth above, there is no reasonable expectation that Plaintiffs will be

## V. CONCLUSION

For these reasons,

**IT IS ORDERED** that the Secretary's Motion to Dismiss, R. Doc. 22, is **GRANTED**.

The case is **DISMISSED** as moot.

New Orleans, Louisiana, this 6th day of January, 2022.

*[signature: Eldon E. Fallon]*
UNITED STATES DISTRICT JUDGE

---

subject to the same action again.